DANIEL C. LYNN

*v.*

CALEB M. LYERLE.

*Filed at Mt. Vernon January 22, 1885.*

1. SPECIFIC PERFORMANCE—*as to promise to pay purchase money under new agreement after prior transaction set aside as in fraud of creditors.* The owner of a tract of land conveyed the same to his son-in-law for $1200, taking five promissory notes, of $200 each, from the grantee, one to each of the grantor's five daughters, the other $200 being the grantee's wife's share of the purchase money. The conveyance was set aside at the instance of creditors of the grantor, and the notes given for the purchase money ordered

to be surrendered and cancelled, which was done, except as to one note which had been paid. After the land was advertised for sale in the interest of the creditors, the grantor agreed to discharge the judgments and the lien on the land, and did so upon the agreement of the grantee to pay him $1200, which he afterward refused to do, or give his notes for the price: *Held*, that a court of equity would compel him to pay the sum really due from him; and that he could not defeat a suit in which relief was sought in that regard, on the alleged ground the conveyance was originally made to defraud creditors.

2. CHANCERY—*practice—omission to make formal disposition of injunction in decree.* On bill to compel the purchaser of land to specifically perform his contract, the court, in decreeing that he pay the sum agreed to be paid, and making it a lien on the premises, made no disposition of an injunction previously granted restraining him from cutting and selling timber from the land: *Held*, no error, as the decree fixed the rights of the parties, and when the defendant should execute the decree the injunction would fall or cease to hold good.

3. ATTORNEY AT LAW—*privileged communications.* Where two parties go together to an attorney, and make statements to him in the presence of each other, such statements are not confidential communications intended to be withheld from the opposite party, and there is no error in permitting the attorney to testify thereto in a suit between the parties relating to the subject matter of such communications.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Union county; the Hon. DANIEL M. BROWNING, Judge, presiding.

Mr. W. C. MORELAND, and Messrs. INSCORE & MAXEY, for the appellant:

The court erred in permitting W. S. Day to testify as a witness, because he testified that he was acting as attorney for each of the parties to the suit when their statements were made to him. *Granger* v. *Warrington,* 3 Gilm. 299; *People* v. *Barker,* 56 Ill. 299; *Dietrich* v. *Mitchell,* 43 id. 40.

There never was but one contract entered into between the parties for this land, and that was when the deed was made, in 1880. By that contract appellant was to pay, not to appellee, but to his daughters, $1000,—$200 of which has been paid, and a part of the remainder is not due. While this contract was fraudulent as to creditors, it was good

9—113 ILL.

*inter partes. Harmon* v. *Harmon,* 63 Ill. 512; *Ward* v. *Enders,* 29 id. 519; *Campbell* v. *Whitson,* 68 id. 240; *Bott* v. *Rogers,* 3 Paige, 154.

A court of equity will not aid in the enforcement of fraudulent contracts, but, will leave the parties in the same position it finds them. *Crosier* v. *Acer,* 7 Paige's Ch. 137; *Miller* v. *Markle,* 21 Ill. 152; *Harmon* v. *Harmon,* 63 id. 512.

Mr. M. C. CRAWFORD, for the appellee:

This transfer was not set aside because of fraud in fact, but for the reason that there was no valuable consideration moving from the daughters of appellee to him for said land; and as the law requires that a man shall be just before he is generous, the transfer was declared to be fraudulent, in law, as to creditors.

The transfer was made in good faith, and for a lawful purpose, and therefore does not antagonize the principle laid down in *Harmon* v. *Harmon,* 63 Ill. 512, *Ward* v. *Enders,* 29 id. 519, and *Campbell* v. *Whitson,* 68 id. 240.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The facts of this case are, as we gather them, that about the 17th day of May, 1880, appellee, Caleb M. Lyerle, conveyed certain land (out of which transaction this controversy arises) to appellant, Daniel C. Lynn, for the consideration of $1200. No money was paid to appellee, but appellant gave his notes, due in five annual payments, to five of appellee's daughters, for the aggregate sum of $200 to each daughter, and the remaining $200 was to appellant's wife, who was another daughter. The transaction, it is claimed, was intended as a gift or distribution of this property among appellee's children. On the other hand, it is insisted that it was intended to defraud his creditors. It appears that appellee was, at the time of the transaction, surety for one Morgan, to C. and G.

Cooper & Co., and the Harrison Machine Works, for different sums; that Morgan proved to be insolvent, on the rendition of judgments against him; that Cooper & Co., and the machine works, filed a bill to set aside that conveyance as fraudulent as against creditors. On a hearing, it was set aside, and the land decreed to be sold to satisfy their judgments, and the notes given by appellant were ordered to be cancelled. After the rendition of the decree, and the land being advertised for sale, it was arranged between appellant and appellee that the latter should raise the money and pay off the judgments, and appellant would purchase the land for $1200. When appellee had raised the money and paid off the judgments, appellant refused to make payment, give his notes, or proceed to perform his part of the agreement. He only paid $50 under this contract. On a hearing, the circuit court granted the relief sought, found the amount due to be $1003, decreed its payment, and in default thereof that the land be sold for the payment of that sum. From that decree defendant appeals, and assigns various errors.

The abstract is wholly unintelligible, as it furnishes none of the pleadings, or even a statement as to the nature or purpose of the bill or the character of the defence, nor does it set out the substance of the evidence. We have, however, endeavored to obtain the facts, and believe we have done so.

It is claimed that the first sale to appellant was in fraud of appellee's creditors, and for that reason appellee is not entitled to relief; that as between the parties the transaction was binding, but void as to creditors; that when the deed was declared to be void as to creditors, the title still remained in appellant, subject to the lien of the judgment against appellee and in favor of the creditors; that appellant had only to pay the judgments and costs of the proceeding, to perfect his title. This is no doubt true, but he did not pay the judgments and costs, or any portion of that sum but $50. His notes to his sisters-in-law had been surrendered and cancelled under the

decree, and he was thereby relieved from that liability. Appellee, his father-in-law, paid off these judgments and costs, and relieved the land from all liens. Of this there is no dispute. And to permit appellant to escape his liability to pay his wife's sisters, or to repay appellee for money advanced to save the land, would be monstrous injustice, that should receive the sanction of no court of justice. To sustain the title, freed from all liability or lien, under the circumstances of the case, would be to aid in a most iniquitous and unblushing fraud. If appellant seeks to hold the land, every principle of justice and fair dealing requires that he should pay for it. He has no equitable or moral claim to have appellee's land without paying a consideration. Appellee claims that he paid the money to relieve the property, under an agreement that appellant would hold the title and refund the money paid to relieve it from the lien of the creditors' judgments and to prevent the sale of the land. This appellant denies, but gives no explanation of the reason why appellee paid the money to relieve the title. Had it been the understanding that appellee should pay the money that the title might remain in appellant without further cost to him, he would have shown and proved the arrangement and its terms. It would be incredible to suppose that had there been such an arrangement, appellant would not have set it up and relied on it as a defence. Had appellant paid for the land at the time the land was conveyed to him, or afterwards, as between him and appellee he would have had equities appealing strongly for protection; but he only agreed to pay appellee's daughters in installments, on long time, and he was relieved of that by the cancellation of his notes by the decree of the court.

From the inherent nature of the transaction, we are impelled to believe that when appellee advanced the money to relieve the land from the lien of the judgments, there must have been an understanding that he was to be reimbursed, or the land reconveyed to him. It is wholly improbable that

appellee should have raised the money, paid off the liens, and relieved the property, without some arrangement with appellant in regard to the transaction.   We must therefore believe appellee's version of the arrangement.   Moreover, he is strongly corroborated by Day.   The latter testifies that they were in his office before the money was paid to prevent the sale of land, and were endeavoring to agree upon terms between themselves, and asked his opinion as to several items to be allowed appellant, and that he said he should be allowed the $200 paid to Mrs. Davis, and should be allowed attorney's fees paid by him in defending the chancery suits to subject the land to the payment of the judgments in favor of Cooper & Co., and the machine works.   Although he says he heard no contract made, they were arranging the terms on which the money was to be paid to redeem, and appellant advanced $50 for the purpose, and appellee the balance.   This strongly corroborates appellee's evidence.   If there was no agreement as to the price appellant was to pay, why ask Day what allowances should be made to appellant?   If there was no such agreement, why ask such questions?   If there was no understanding that the land was to be taken by appellant at a given price, then such questions are wholly meaningless. Nor does appellant, in his testimony, attempt to explain why these questions were asked.   If for another purpose, he would have been more than willing to have given the explanation when he was on the stand.   His failure to do so is strongly corroborative of appellee's evidence.

Appellee testified that appellant agreed to take the land, if he would redeem it from the liens, at $1200, but he was to retain $200.   This, he says, was intended to cover the sum he had previously given to appellant's wife in a reduction of the price of the land.   He swears that appellant agreed to take it, and was to pay $200 down when the judgments were satisfied, and he paid $50.   Day testified that this payment was made.   It is urged that Day being the attorney of both

parties when they consulted him, the court erred in admitting his evidence, and the cases of *Granger* v. *Warrington*, 3 Gilm. 299, *People* v. *Barker*, 56 Ill. 299, and *Dietrich* v. *Mitchell*, 43 id. 40, are referred to as supporting the objection. The cases are not in point, nor do they have any bearing in favor of appellant. They assert the general rule that communications made by a client to his attorney in reference to his case, are privileged, and can not be testified to by the attorney. But here both parties were present, and what each said was communicated to the other, as well as to the attorney. They were not secret, and designed to be withheld from the opposite party. The reason for the rule is, that the other party shall not be informed of admissions and facts made known to the attorney, so as to be used against the client. Here no such reason exists. Appellant made the same statements to appellee on that occasion that he made to Day, and hence they are not privileged, and the court did not err in their admission in evidence.

It is urged that appellant had sold a large quantity of poplar timber standing on the land, and had received a portion of the price, and had negotiated the notes given for the balance by the purchasers, and it is claimed, as we understand it, that appellant should be allowed for that amount. We are unable to perceive any, the slightest, claim, in reason or justice, for any such allowance. He has received the money, and if he will pay the decree he can execute the agreement by furnishing the timber to the purchasers. If the land is sold, and appellee's lien is superior to that of the purchasers, he then sold property to which he had no title, and he can restore the money. The purchasers are not parties, and the court could not settle their rights without their having an opportunity to be heard.

It is claimed there was error in not disposing of the injunction preventing appellant from selling any more timber, on the final hearing. The rights of the parties are found and

fixed by the final decree, and when it shall be executed the injunction will fall, or application can be made for its dissolution.

Appellant claims that he should have been credited or allowed on the price he was to pay for the land, the $200 he had paid to Mrs. Davis, one of the daughters of appellee, to take up his notes to her. On turning to the record, we find in the decree cancelling the deed from appellee to appellant for this land, this recital: "Be and the same is hereby set aside and vacated, and declared null and void and of no effect whatever as against the complainants, except the said Daniel C. Lynn shall have a lien on the premises for $200 paid to Nancy S. Davis, a defendant herein, as a part of the purchase herein." This was a finding by the court before the contract or verbal agreement was made under which appellant advanced the money to pay the judgments. But appellee testified that appellant was to give him $1000 for the land above his wife's share, and on the same day they went to Day's office to consult him as to what deductions should be made from that sum, and it is clear that some deductions were to be made from the sum agreed upon. Day, at that interview, told them that this $200 should be deducted, and no objection was made to the statement. Had the agreement been to give $1000 in addition to that, appellee would undoubtedly have then said so; but failing to do so, it is evident that it was understood it was to be deducted.

The court therefore erred in not giving a credit to appellant for that sum, and the decree will be modified by reducing the decree of the circuit court to the extent of $200, and it will be affirmed as to the remainder. And the case is remanded to the Appellate Court to so direct the circuit court.

*Decree modified.*