## F. E. Andrews, et al. v. Jesse W. Scott, et al.
### Gen. No. 4,274.

## Jesse W. Scott, et al. v. The Aultman Company.
### Gen. No. 4,276.

113    581
a211s 612

1. PROPERTY RIGHTS—*jurisdiction of court to settle, in divorce proceeding.* In a divorce proceeding the court has jurisdiction to adjudicate upon the property rights between husband and wife.

2. RETURN NULLA BONA—*when, not essential to maintenance of bill in aid of execution.* Where a bill is filed to set aside alleged fraudulent conveyances of land in order that a levy may be made thereon, a return *nulla bona* is not essential, notwithstanding the conveyances in question may not have been made by the judgment debtor.

3. ENTITLEMENT OF CASE—*when, cannot be objected to.* If, in a suit to revive a judgment or to recover upon a former judgment, the title is irregular, such objection must be raised in that suit and cannot subsequently be interposed in a proceeding in aid of an execution, and the estoppel so to object is binding as well upon his voluntary grantees as upon the judgment debtor himself.

4. SHERIFF'S SALE—*when, does not constitute satisfaction of judgment.* Where a party bids in land at a sheriff's sale but does not pay any money and the sheriff does not indorse the executions satisfied, the same are not deemed to have been satisfied and further proceedings thereon are not precluded.

5. EXPRESS TRUSTS—*when, need not be in writing.* Notwithstanding the Statute of Frauds requires express trusts to be evidenced by a writing, it is not so as against creditors seeking to set aside conveyances as in fraud of their rights.

6. ATTORNEY—*when, may testify to conversations with client.* An attorney may testify to conversations between himself and client occurring, likewise, with and in the presence of the attorney for the adverse party.

7. DECREE—*when, not reversed for admission of incompetent evidence.* Where, disregarding incompetent evidence admitted, there is enough competent evidence to sustain the decree, the same will not be disturbed on appeal.

8. BILL IN AID OF EXECUTION—*what property may be reached by.* Real estate owned by a judgment debtor may be reached in such a proceeding notwithstanding it may have been acquired by improper methods.

9. PARTIES—*who not necessary, to bill in aid of execution.* Persons who have parted with their title to the land involved in such a proceeding are not necessary parties thereto.

10. COSTS—*taxation of.* The taxation of costs in a chancery pro-

ceeding is a matter of discretion with the trial court, and such discretion, in the absence of abuse, will not be interfered with on appeal.

Proceeding in aid of execution. Appeal from the Circuit Court of Whiteside County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed April 14, 1904.

**Statement by the Court.** The above entitled causes are appeals from different parts of the same decree, and it will save time and space to dispose of them together. The Aultman Company has a judgment in the Circuit Court of Whiteside county, and an execution thereon against Jesse W. Scott. G. A. Stultz and Charles H. Woodburn have another such judgment and execution, and F. E. Andrews has a third. They joined in a bill in equity in aid of their executions, making defendants thereto Jesse W. Scott, his son, Charles P. Scott, and Keturah Scott, wife of said Charles. The bill set up the facts hereinafter detailed, and charged that, by mesne conveyances in his family, the title to certain real estate in Whiteside county, owned in fact by said Jesse W. Scott, had been placed in his son, Charles P. Scott, for the purpose of hindering, delaying and defrauding the Aultman Company and other creditors of said Jesse W. Scott. The bill set up a written agreement whereby the title to said real estate was held for said Jesse W. Scott, and a fraudulent attempt made to cancel said agreement without consideration, with the knowledge of Charles P. Scott. Defendants answered, denying various allegations of the bill, and denying all charges of fraud, and asserting that said Jesse W. Scott had no right, title or interest in said lands, and that they were owned by Charles P. Scott. By an amendment defendants set up the Statute of Frauds; and also averred that the conveyance to Wayne E. Scott, hereinafter mentioned, was made by the advice and with the consent and by the procurement of Andrews, Stultz and Woodburn, for the purpose and with the intent to place said property beyond the reach of the Aultman Company, and to prevent the Aultman Company from subjecting the same to the payment of a judgment said company then had

against Jesse W. Scott, and that because Andrews, Stultz and Woodburn advised and consented to said conveyance with a full knowledge of all the facts, they are estopped from now claiming the conveyance was fraudulent as to them. A special master heard the proofs and made findings to the effect that Jesse W. Scott owned the lands described in the bill; that the title had been conveyed to his son, Wayne Scott, and by Wayne to Charles, to defraud the Aultman Company, and that the latter was entitled to the relief prayed; but that Andrews, Stultz and Woodburn were not entitled to relief, because their judgments were obtained after the conveyance to Wayne Scott, and they were instigators and advisers in making such conveyance. The Scotts filed objections to said report, as did also Andrews, Stultz and Woodburn, all of which were overruled. The case was heard by the chancellor upon exceptions to the master's report, and a decree was rendered overruling said exceptions, subjecting the lands to sale under the execution of the Aultman Company, then outstanding, or under another execution to be issued upon that judgment, dismissing the bill as to complainants, Andrews, Stultz and Woodburn, for want of equity, and adjudging that the Scotts pay the costs. The cause first above entitled is an appeal by Andrews, Stultz and Woodburn from so much of the decree as dismissed their bill for want of equity. The second is an appeal by defendants from so much of the decree as is in favor of the Aultman Company.

The following facts were established by record and documentary evidence : In 1880 Jesse W. Scott owned a farm in Whiteside county, containing 202½ acres. On February 9, 1880, he and his wife, Charlotte A. Scott, conveyed it to Solon Stevens, his wife's father. On March 9, 1880, Solon Stevens and his wife conveyed it to Charlotte A. Scott, the wife of Jesse W. Scott. On October 1, 1890, Jesse W. Scott filed a bill in the Circuit Court of Whiteside county against his wife for a divorce or dissolution of the marriage between them, and for a reconveyance to him of this farm. The bill, besides setting up the facts supposed to entitle

him to a divorce or an annulment of the marriage, stated the facts as to the conveyance by him of this farm to his wife through her father, and that it was by his wife's persuasion and on the understanding it should be used for the common benefit of the family and their children; but that in fact Mrs. Scott had formed a design to cheat and defraud Jesse W. Scott out of all his real and personal estate, and that her real intention was to obtain the property for her own use and benefit; that said conveyance was without consideration except said understanding, and that she thereafter treated him so as to deprive him of the ordinary necessaries of life, and persecuted him with the intention of driving him away so that she might have the farm and the personal property for herself. The prayer was for a divorce or an annulment of the marriage, that it be decreed that Charlotte A. Scott held the farm in trust for him, and that she convey it to him and account for the products of the farm and personal property. Ten years later, on December 24, 1900, Jesse W. Scott filed an amended and supplemental bill in said divorce case, wherein he charged Charlotte A. Scott with extreme and repeated cruelty and adultery, and again alleged the transfer of his farm to her through her father because of her abuse, and as a condition upon which she would consent to live contentedly with him; and that it was so conveyed to her upon the understanding between them that she should hold and use the property for the common benefit of the complainant and defendant and their children, and that there was no other consideration for said transfers; but that in fact her real intention was to obtain the title and control of complainant's property and deprive him of all use and benefit thereof, and that she had restricted him to the use of forty acres of the farm. This amended bill prayed a divorce or annulment of the marriage, and that it be decreed that said Charlotte A. Scott held said farm and certain personal property in trust for the complainant and herself, and that there might be an equitable division of said real and personal property between them, and that she be decreed to

convey to complainant the portion of said real estate awarded to him. On February 1, 1901, Charlotte A. Scott answered the amended and supplemental bill. She denied the charges of extreme and repeated cruelty and adultery. She admitted the conveyance of the farm to her, but denied it was on the understanding stated in the bill, and averred there were other considerations and understandings as a basis for the conveyance, and alleged his lack of ability to successfully manage the farm, and that she was forced to take charge as a matter of preservation. She admitted he cultivated forty acres of said farm, which belonged to him under a former agreement between the parties. She alleged that after the filing of the original bill for divorce they agreed to live together as husband and wife, and that if they again disagreed complainant was to accept a certain forty acres of said farm for life in full satisfaction of all right, title and interest he claimed in said real estate. In said answer she tendered Jesse W. Scott a conveyance of said forty acres, to be accepted by him according. to the terms of said agreement. The controversy in the present cause arises out of an alleged settlement of the property rights of the parties to that divorce suit. At the time of that settlement Andrews held one note and Stultz and Woodburn another, upon each of which said parties afterwards recovered judgment against Jesse W. Scott, while the Aultman Company then had a judgment against Jesse W. Scott, which it afterwards revived.

F. E. ANDREWS, G. A. STULTZ and C. H. WOODBURN, for appellants F. E. Andrews, et al., and The Aultman Company, appellee.

C. L. & C. E. SHELDON, for Jesse W. Scott, et al.; HOPKINS, DOLPH & SCOTT, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

It is clear that by the original bill in the divorce suit Jesse W. Scott claimed to be the owner of the entire farm and sought a reconveyance of it to him, and that by the

supplemental bill he sought and claimed a right to an equitable division of the farm and personal property between himself and his wife. Section 17, chapter 40 of the revised statutes, entitled Divorce, is as follows: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." Therefore if the court granted a divorce in that case, it had jurisdiction to go on and settle these contested property rights. It will be seen also that Mrs. Scott by her answer in the divorce case conceded that the title originally came to her from her husband, and that he still had rights in the property. The settlement hereinafter set out was therefore of property rights of which the court then had jurisdiction.

A jury trial of that cause was begun on April 24, 1901. At that trial Stultz and Woodburn were solicitors for Jesse W. Scott, and H. C. Ward and F. E. Andrews were solicitors for Mrs. Scott. On April 25, and before defendant had introduced any testimony, one of the solicitors for Jesse W. Scott said to a solicitor for Mrs. Scott, that if Mrs. Scott would deed to Jesse W. Scott that part of the farm which was west of what is called in this record the Illinois and Mississippi Canal (which is the tract in controversy in the case at bar, and which is said by counsel to contain about ninety-three acres,) and would pay Jesse W. Scott $115 and give him certain personal property, he would convey to her all his right, title and interest in the rest of the farm lying east of the canal. The solicitor for Mrs. Scott asked that the proposition be put in writing for their consideration. Accordingly a paper, known here as exhibit P, was written out, except the signatures. When the attorney writing it got as far as the place where it said that Mrs. Scott should deed to her husband the land west of the canal, Andrews said he questioned whether it ought to be deeded to Jesse W. Scott in view of the fact that there were judgments against him which would become

Andrews v. Scott.

liens on the premises.   Stultz said there was no judgment against him, and it should be deeded to Jesse W. Scott direct.   Woodburn said there were judgments against him, and mentioned one in favor of the Aultman Company. After some discussion the paper was made to read as follows:   "Complainant proposes to settle the present cause now on trial on the following terms :   That defendant shall deed to complainant or to some one for him, all the farm in the township of Montmorency lying west of the canal, free and clear of all incumbrances, and the sum of $115 cash, one corn plow and one set of double harness bought by complainant, and that defendant pay the costs of this proceeding, and that complainant will quit-claim to the defendant all his rights in the balance of her real property, and to give her a bill of sale for all the personal property now on said farm except as above enumerated, and all suits and matters in litigation to be dismissed at plaintiff's costs in each of said actions."   Mrs. Scott's counsel took this paper away, and according to their testimony all they did that day was with her full consent and acquiescence.   It was finally arranged that the provision for $115 cash should be stricken out of the paper, and it was so stricken out. It was orally agreed that complainant should abandon his charge of adultery against his wife, that she should offer no further resistance to his application for divorce on the ground of extreme and repeated cruelty, and that he should take a decree, and that this paper should be signed and carried out as a settlement of their property rights.   Stultz and Woodburn each then signed the paper for the complainant, and Ward and Andrews each signed it for the defendant.   The work of drawing the different papers required to effect this settlement was then distributed among the four attorneys.   A deed of the land west of the canal, being that now in dispute, was drawn from Charlotte A. Scott to Wayne E. Scott, a son of the parties, whom Jesse W. Scott selected as the person to receive the title because he was unmarried and there would be no trouble with his wife in procuring a reconveyance.   Another deed was

drawn from Jesse W. Scott to Charlotte A. Scott of the land east of the canal, being the rest of the 202½ acres. A paper was drawn between Wayne E. Scott, party of the first part, and Jesse W. Scott, wherein it was recited that Wayne had that day received a warranty deed of the land in question west of the canal, and it continued as follows: " Said party of the first part hereby agrees with said Jesse W. Scott, party of the second part, in consideration of the sum of four thousand dollars in hand paid, the receipt whereof is hereby acknowledged, to give to said Jesse W. Scott, the party of the second part, the right to immediate possession of said property herein described, to have and to keep the same ; and said party of the first part also agrees to deed to said party of the second part on request of said second party the said property above described by warranty deed free and clear of all incumbrance." No sum of four thousand dollars or any other amount passed between Wayne and his father or any of the other parties. Other papers necessary to the settlement of the property rights were prepared. Complainant completed the trial of the divorce suit and took a decree of divorce for extreme and repeated cruelty. The papers were thereafter executed and de-livered on that day or soon thereafter.

Mrs. Scott testified that she did not in that settlement agree to deed this property to Jesse W. Scott or recognize him as having any right therein, but that she expressly declared that he should never have any of it, and that she only agreed to convey it to the children or some of them. She testified she did not remember seeing or reading ex-hibit P, and did not know of its contents. Her sons, Wayne and Charles, supported her to some extent, testifying they heard her repeatedly declare that their father should not have the land, and never heard her say that she would sign a deed to him or to any one whom he might name. Wayne testified he was not in the room where the settlement was being made. The four attorneys named, Ward, Andrews, Stultz and Woodburn, each testified that the settlement was talked over and discussed between them and the sev-

eral parties repeatedly; and Mrs. Scott's attorneys, Ward
and Andrews, testified that exhibit P was signed with her
full concurrence, and that she fully understood that the
land west of the canal was to be conveyed to Jesse W.
Scott or such person as he might name, in settlement of
their property rights.   Further proof that Mrs. Scott knew
that the land was conveyed for the benefit of Jesse W.
Scott is found in the fact that some little time afterwards
she caused one of her attorneys to go and see Jesse W. Scott
to ask if he would permit her to keep her cattle upon a cer-
tain pasture field in this land west of the canal.   On May
first, the sixth day after this settlement, Jesse W. Scott
and Wayne Scott endorsed at the foot of the paper Wayne
had given his father, a statement that Jesse W. Scott had
assigned all his right and interest in said land to Wayne
Scott.   There is no pretense there was any consideration
for this document, and why it was given is not reasonably
explained, and perhaps cannot be fully determined, but it
apparently was not intended by the parties thereto to be
effective as an assignment and release, for in July following
Wayne Scott wrote a letter which gave an order to the
tenant on this land directing him to deliver his share of
the grain raised on the farm to Jesse W. Scott.   About that
time, also, Jesse W. Scott threatened to sue Charlotte
Scott for taking a piece of fence off the farm west of the
canal, showing he still considered it his farm; and Wayne
saw his mother about it and then told her he would replace
it, an unusual thing to promise if it was his farm.   The
judgment of the Aultman Company had been obtained on
October 17, 1888.   On August 12 following the settlement
above stated, it brought a suit to revive said judgment, or
an action of debt upon the judgment, and service of sum-
mons was had on Jesse W. Scott on August 14, 1901.   That
writ was returnable on the first Monday of October and
resulted in a judgment in favor of the Aultman Company
on November 27, 1901.   Between the date of the service of
said summons and the revival of said judgment Wayne
Scott and his wife, whom he had recently married, con-

veyed said premises to his brother, Charles P. Scott, by quit-
claim deed, for an expressed consideration of "one dollar and
other valuable considerations." This deed was dated Octo-
ber 5, acknowledged November 4, and recorded November 6,
1901. It is testified by Wayne and Charles that the real
consideration for this deed was $3,000; that Charles paid
Wayne $200, and that it was agreed he should pay the re-
maining $2,800 whenever it was convenient. No note was
taken for that or any amount. No agreement was made
when it should be paid. There was no provision for interest
on the sum remaining unpaid. There was no writing of any
kind except the deed. The evidence of Wayne and Charles
as to what rents had been received from the property during
the time they respectively held the title, and how those
rents had been disposed of, did not indicate that they were
the real owners of the property or personally interested in
the rents, or that they had that knowledge which an owner
would be likely to have. We have no doubt the court cor-
rectly found that by this settlement Jesse W. Scott became
the owner of the land now in dispute lying west of the
canal, and that the title was at his request and by the ad-
vice of the attorneys there present placed in his son Wayne
to prevent its being reached by his judgment creditor, the
Aultman Company. If the testimony left the slightest
doubt of that allegation, it is removed by the amendment
to the answer, filed long after the proofs were taken, in
which amendment is the following allegation : "That at
the time said premises were conveyed by Charlotte A. Scott
to Wayne E. Scott that such conveyance was so made by
the advice and with the consent and procurement of the
said complainants, F. E. Andrews, G. A. Stultz and Charles
H. Woodburn, and said complainants advised said convey-
ance to be so made by said Charlotte A. Scott to Wayne
E. Scott for the purpose and with the intent to place said
property beyond the reach of the complainant, the Aultman
Company, and to prevent said complainant, the Aultman
Company, from subjecting the same to the payment of a
certain judgment which said company then had against

Jesse W. Scott." Nor do we doubt that the conveyance from Wayne to Charles was colorable only; that there was no substantial consideration; that Charles knew all the facts as to the use for which Wayne held the property, and that the deed was made because of the suit brought to revive the Aultman judgment.

It is argued that this is a creditor's bill, and that the executions should first have been returned *nulla bona*, and that the bill could not be filed while the executions were outstanding in the hands of the sheriff. This is a misconception. It is a bill in the nature of a creditor's bill for the purpose of subjecting property to sale on outstanding executions. It is contended that such a bill will not lie except where the title has been conveyed by the execution debtor to the person who is alleged to hold it fraudulently. The title to this land had been in Jesse W. Scott. He conveyed it to his wife's father, and that father to the wife of Jesse W. Scott, and she conveyed it to their son, Wayne, and he to his brother, Charles, so that the title came originally from Jesse W. Scott, and whether the transfers in the family were one or many is immaterial. But if the title had never been in Jesse W. Scott the rule would not be as contended. It was in settlement of a claim asserted by Jesse W. Scott to an interest in these and other lands that Charlotte A. Scott conveyed the property to Wayne Scott. In Bennett v. Stout, 98 Ill. 47, a like bill was filed in aid of an execution, to reach property standing in the name of the wife of the execution debtor. The title had not been in the execution debtor, but it was claimed that he had furnished the money to buy it and was the real purchaser. The complainant was defeated for lack of sufficient proof of the allegations of fact, but the right to maintain such a bill was recognized. In Smith v. Patton, 194 Ill. 638, there was an agreement to convey certain real estate to an insolvent debtor, and by his direction the conveyance was made to his daughter instead, and it was held that the effect of the transfer was the same as if the insolvent debtor had himself conveyed the property without

consideration to his daughter, and that as to his creditors the conveyance was fraudulent in law. We hold this suit was properly brought.

The original Aultman judgment was in favor of " C. Aultman & Co." The revival thereof, or the recovery of a judgment in debt upon said former judgment, was in favor of " C. Aultman & Company to the use of the Aultman Company." If this suit to revive a judgment, or to recover upon a former judgment in debt, was in any way improperly entitled, that was a matter to be determined in that suit, and Jesse W. Scott, having been personally served therein, is bound by that judgment in the form in which it was then entered. That which binds him binds Wayne Scott and Charles Scott, under the proof before us.

After complainants obtained their several executions they caused them to be levied upon this land, and the same to be advertised for sale under the executions. On the day fixed for the sale the sheriff offered the land for sale under the special execution in favor of Stultz and Woodburn, that suit having been begun by an attachment levied upon this land. The Aultman Company bid $1,758.55 therefor, and the land was struck off to it, and the sheriff prepared but did not execute a certificate of sale. The Aultman Company paid no money. The amount of the bid it seems was equal to the amount due upon all the executions and costs, and if it had been paid it would have satisfied them. But for some reason the company abandoned its bid and did not perfect it, and the sheriff accordingly did not endorse the executions as satisfied. A month and a half thereafter this bill was filed. It is urged that this sale was a satisfaction of the executions, or at least that there could be no further proceedings under them, nor would these executions sustain a bill, until an order of court setting aside the sale. In Herdman v. Cooper, 138 Ill. 583, a sheriff advertised land for sale, and offered it for sale at the proper time, and a bid was made by one McLaughlin, and the property was declared by the sheriff sold to him, and a certificate of purchase was made out and offered him, but McLaughlin de-

clined to complete his purchase and did not pay the money, and did not receive the certificate. The sheriff endorsed these facts upon the execution, and returned it not satisfied, and afterwards repossessed himself of the execution and again offered the property for sale and sold it. The court said that if the sale was not perfected by McLaughlin, there was no objection to the subsequent sale, for it was competent for the sheriff to offer for sale real estate levied upon by an execution, from time to time until it was sold. In Bradley v. Challoner's Sons Company, 103 Ill. App. 618, a sheriff's sale of real estate on execution was advertised, and a bid was made by Young in behalf of Ruckman, and the property was struck off to Ruckman, but Young immediately thereafter informed the sheriff that Ruckman would not comply with the terms of his bid, or pay the amount thereof, or any part thereof, or receive a certificate of sale. The court said that when Young notified the sheriff that Ruckman would not comply with his bid, pay the money or receive the certificate of sale, the sheriff had a right to treat the matter as no sale and sell again; he was not obliged to make out and tender a certificate of sale, wait for his money or attempt to collect it in such way as he could; that while he might have held Ruckman to his bid and thus made himself responsible to the creditor for the amount of the sale and been bound to pay such sum at once, he was under no obligation to do this; and that upon the mere failure of the bidder to pay, the sheriff had a right to readvertise and sell. We regard it as clear that the executions upon which this bill rests were not satisfied by the uncompleted sale.

The Statute of Frauds is set up as a defense, and it is argued that because there is no writing by which Charles P. Scott expresses that he holds this land in trust for Jesse W. Scott, therefore Jesse W. Scott could not enforce a reconveyance, and therefore his creditors cannot reach it. It may be that Jesse W. Scott could not recover this land for lack of a writing signed by Charles P. Scott expressing the trust, or even because his purpose in having it con-

veyed to Wayne was to put it out of the reach of his
creditors.   But this is a bill filed by the creditors to reach
the real estate alleged to be owned in fact by the judg-
ment debtor, the title to which, it is claimed, was fraudu-
lently placed in the name of another to defeat the cred-
itors.   It would be a strange doctrine to hold that if one
who fraudulently places the title to his real property in
the name of another to delay and defeat his creditors,
does not take a writing evidencing the secret trust, the
fact that as a part of his scheme he fails to take a writing,
places the property beyond the reach of his creditors, and
beyond the searching powers of a court of equity.   In our
judgment this contention cannot be sustained.

.It is urged that the attorneys are incompetent witnesses
to testify to the details of the settlement.   It may be that
one of Jesse W. Scott's counsel testified to one conversa-
tion with Jesse W. Scott when no one else was present.
That, perhaps, is privileged.   But that conversation may
be disregarded, as nothing was there stated which did not
appear by other testimony.   As to all the other conversa-
tions, they were in the presence of the attorneys for both
parties.   They were not designed as secret communications,
nor intended to be withheld from the opposite party.   As
said in Lynn v. Lyerle, 113 Ill. 128, the reason of the rule
making communications by a client to his attorney in ref-
erence to his case privileged is that the other party shall
not be informed of admissions and facts made known to the
attorney so as to be used against his client.   Whatever
Jesse W. Scott said during the interviews preceding and
leading up to this settlement, he said not only in the pres-
ence of his own attorneys, but in the presence of the attor-
neys for the opposite party, and part of it was in the pres-
ence of some of his children.   We hold the testimony of
these attorneys competent.   Certainly the objection sug-
gested will not apply to the testimony of his wife's attor-
neys, Ward and Andrews; and their testimony would be
sufficient to establish complainant's case when considered
with all the documents that were prepared on that day.

It is said that the agreement for the settlement in the divorce suit and for a withdrawal of the charge of adultery is contrary to public policy. This is not a suit between those parties, nor is it a suit to enforce that agreement. The agreement was executed, and the question is not whether it was in accord with or contrary to good morals, but whether this land by that settlement became in fact the property of Jesse W. Scott, although the title was placed in the name of his son. If this is his land it is subject to the claims of his execution creditors, even if he obtained the land by improper methods, which we do not decide.

It is urged that Charlotte and Wayne Scott were necessary parties, and that the decree should be reversed on that account. Wayne has no interest in the case. He conveyed by quitclaim deed, and testified he had no interest of any kind in this suit. Nor do we see that Charlotte was a necessary party after she had parted with the title. Charles P. Scott could not resort to the warranty of title she gave, because he has only a quitclaim deed, and because her deed to Wayne was in effect a deed from Jesse W. Scott to Wayne, and Wayne took the title as did also Charles, with a knowledge of the reason why it was made, and that it was for the purpose of evading the Aultman judgment.

The decree as to costs is attacked, first, on the ground that Andrews, Stultz and Woodburn should have been made to pay a part of the costs, and, second, that it was error to decree costs against Keturah Scott, wife of Charles Scott. It does not appear that any costs were made separately by Andrews, Stultz and Woodburn, or that any testimony was introduced which would have been unnecessary if the Aultman Company had been the sole complainant. The payment of the costs in a chancery proceeding is in the discretion of the court, and we see no reason to think that discretion was abused in not taxing part of the costs against Andrews, Stultz and Woodburn. Keturah Scott's interest in the case was only an inchoate right of dower, and if she had been defaulted and taken

no part in the trial she should not have been subjected to payment of costs; but she joined with the other defendants, as she had a right to do, for the protection of her inchoate right of dower, in filing an answer in which she denied all the charges of fraud, and denied that this became the property of Jesse W. Scott in the settlement of the divorce suit, and denied that Charles P Scott held the property in trust for Jesse W. Scott, or for his own use or benefit. She appeared with the other defendants by her counsel before the master and took part as a defendant in all the proofs and proceedings that were had, and we do not doubt that she is as liable for the costs as any of the other defendants.

Andrews, Stultz and Woodburn were active participants in the preparation of the papers by which this property, which it was agreed should be the property of Jesse W. Scott in settlement of his property rights in the entire farm, was conveyed to Wayne Scott for the purpose of putting it out of the reach of the Aultman Company, Jesse W. Scott's judgment creditor. It is true Stultz at first said the deed should be made direct to Jesse W. Scott, but this was because he did not then know, and did not think it was true, that there were any judgments against Jesse W. Scott. Woodburn is co-plaintiff with Stultz in the judgment, and apparently they were partners in the debt for which they afterwards obtained a judgment. Woodburn insisted there was such a judgment, as in fact there was. Stultz drew the very instrument by which Charlotte A. Scott placed the title of this property in Wayne Scott instead of Jesse W. Scott. This conveyance was not only with the active acquiescence and consent of Andrews, Stultz and Woodburn, but by their advice and procurement. There is perhaps some dispute as to whether the suggestion that the land be not deeded to Jesse W. Scott because of the Aultman judgment first came from Andrews or from one of the sons. But these attorneys were the ones whose advice shaped what was there done, and it was done because they advised it, and it was done with the ex-

press purpose of preventing the Aultman Company from collecting its judgment.   How can it be said that this conveyance was fraudulent as to these attorneys when it was made in accordance with their advice and suggestion, when they were cognizant of all the facts, when they themselves drew the papers?   Suppose that after this settlement was made Jesse W. Scott had paid the Aultman judgment, and this was a bill by Andrews, Stultz and Woodburn alone, attacking this conveyance as fraudulent?   It seems to us that it is too plain for serious discussion that they could not maintain the suit, because they advised that this fraud be perpetrated, and because they drew the papers by which it was carried into effect, and because they did so with full knowledge of all the facts.

Some other suggestions against the validity of this decree have been made by counsel, of which we think it sufficient to say that they have been considered and are deemed not well taken.

We are of opinion the decree of the court below was justified by the proofs, and it is therefore affirmed.

*Affirmed.*